1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL CRUZ ARAGON, | Case No. 1:21-cv-00407-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 24, 26, 27) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Manuel Cruz Aragon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 10, 11.)

1

## II.

2

## BACKGROUND[2]

3      On April 6, 2018, Plaintiff concurrently filed applications for Social Security benefits

4 under Title II and Supplemental Security Income ("SSI") under Title XVI, alleging disability

5 beginning January 30, 2018, due to digestive system problems, depression, anxiety, post-

6 traumatic stress disorder (PTSD), and bipolar disorder.  (Admin. Rec. ("AR") 20, 221–45, 274,

7 ECF No. 13-1.)

8      Plaintiff's claims were initially denied on July 26, 2018, and denied upon reconsideration

9 on September 24, 2018.  (AR 96–97, 124–25.)  On March 3, 2020, Plaintiff, represented by

10 counsel,[3] appeared via videoconference for an administrative hearing before Administrative Law

11 Judge Kathleen Laub (the "ALJ").  (AR 41–69.)  Vocational expert ("VE") Aimee Spinelli also

12 testified at the hearing.  On April 30, 2020, the ALJ issued a decision denying benefits.  (AR 17–

13 40.)  On September 22, 2020, the Appeals Council denied Plaintiff's request for review, making

14 the ALJ's decision the final decision of the Commissioner.  (AR 6–11.)

15      Plaintiff initiated this action in federal court on March 12, 2021, and seeks judicial review

16 of the denial of his application for benefits.  (ECF No. 1.)  The Commissioner lodged the

17 administrative record on November 12, 2021.  (ECF No. 13.)  On May 9, 2022, Plaintiff filed an

18 opening brief.  (ECF No. 24.)  On May 18, 2022, Defendant filed a brief in opposition.  (ECF No.

19 26.)  On June 2, 2022, Plaintiff filed a reply brief.  (ECF No. 27.)

20

## III.

21

## LEGAL STANDARD

22 **A.    The Disability Standard**

23      To qualify for disability insurance benefits under the Social Security Act, the claimant

24 must show that he is unable "to engage in any substantial gainful activity by reason of any

25

---

26 [2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the

27 parties' briefings by their ECF pagination.

28 [3] Plaintiff was co-represented by attorneys Malinda Davies and Jonathan O. Pena at this time (see AR 126, 213); however, only attorney Malinda Davies appeared at the March 3, 2020 disability hearing.

medically determinable physical or mental impairment[4] which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential

evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5]

Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in

the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of

proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

1   RFC.   20 C.F.R. § 416.920(e); <u>Nowden v. Berryhill</u>, No. EDCV 17-00584-JEM, 2018 WL

2   1155971, at *2 (C.D. Cal. Mar. 2, 2018).   The RFC is "the most [one] can still do despite [his]

3   limitations" and represents an assessment "based on all the relevant evidence."   20 C.F.R. §§

4   404.1545(a)(1), 416.945(a)(1).    The RFC must consider all of the claimant's impairments,

5   including those that are not severe.   20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security

6   Ruling ("SSR") 96-8p, <u>available at</u> 1996 WL 374184 (Jul. 2, 1996).[6]   A determination of RFC is

7   not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.   <u>See</u>

8   20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying

9   the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the

10  claimant's physician, to determine residual functional capacity."   <u>Vertigan v. Halter</u>, 260 F.3d

11  1044, 1049 (9th Cir. 2001).

12      At step five, the burden shifts to the Commissioner, who must then show that there are a

13  significant number of jobs in the national economy that the claimant can perform given his RFC,

14  age, education, and work experience.   20 C.F.R. § 416.912(g); <u>Lounsburry v. Barnhart</u>, 468 F.3d

15  1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational Guidelines

16  ("grids"), or call a VE.   <u>See</u> 20 C.F.R. § 404 Subpt. P, App. 2; <u>Lounsburry</u>, 468 F.3d at 1114;

17  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   "Throughout the five-step evaluation,

18  the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

19  for resolving ambiguities.' " <u>Ford</u>, 950 F.3d at 1149 (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035,

20  1039 (9th Cir. 1995)).

21      **B.      Standard of Review**

22      Congress has provided that an individual may obtain judicial review of any final decision

23  of the Commissioner of Social Security regarding entitlement to benefits.   42 U.S.C. § 405(g).   In

24  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

25  the party challenging the decision. <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

26  

27  [6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir.

28  1989); <u>see also</u> <u>Avenetti v. Barnhart</u>, 456 F.3d 1122, 1124 (9th Cir. 2006).

Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

# IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 30, 2020:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022.

- Plaintiff has not engaged in substantial gainful activity since January 30, 2018, the alleged onset date.  (20 C.F.R. §§ 404.1571 et seq.; 20 C.F.R. §§ 416.971 et seq.)

- Plaintiff has the following severe impairments: bipolar I disorder, obsessive-compulsive disorder, antisocial personality disorder/unspecified personality disorder, and a major depressive disorder.  (20 C.F.R. §§ 404.1520(c), 416.920(c).)

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.)

- Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time of up to 30 days, and has a reasoning level of no higher than 2; he can sustain ordinary routines, understand, carry out and remember simple instructions and use judgment in making simple work-related decisions; he can attend and concentrate for two-hour periods totaling a normal eight-hour workday with usual work breaks; he can respond appropriately to occasional supervision, occasional interaction with coworkers and usual work situations; he can work in proximity to others, but cannot perform job tasks that require cooperation with others or tandem job tasks; he can tolerate brief, superficial interaction with the general public on a less than occasional basis; and he can deal with changes in a routine work setting.

- Plaintiff is capable of performing his past relevant work as an order puller and as a

1  production laborer.  This work does not require the performance of work-related activities

2  precluded by Plaintiff's RFC.  (20 C.F.R. §§ 404.1565, 416.965.)

3  • In addition to his past relevant work, there are other jobs that exist in significant numbers

4  in the national economy that Plaintiff also can perform, considering his age, education,

5  work experience, and RFC, such as janitor, groundskeeper, and bagger.  (20 C.F.R. §§

6  404.1569, 404.1569(a), 416.969, 416.969(a).)

7  • Plaintiff has not been under a disability, as defined in the Social Security Act, from

8  January 30, 2018, through April 30, 2020 (the date of the ALJ's decision).  (20 C.F.R. §§

9  404.1520(f), 416.920(f).)

10  (AR 23–36.)

11  **V.**

12  **DISCUSSION**

13  Plaintiff presents two issues on appeal: (1) whether the ALJ provided clear and convincing

14  reasons for rejecting Plaintiff's symptom testimony; and (2) whether substantial evidence

15  supports the ALJ's mental RFC finding.  (ECF No. 24 at 2.)

16  **A.** **Whether the ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Symptom Testimony**

17  

18  1.  <u>Legal Standard</u>[7]

19  The ALJ is responsible for determining credibility,[8] resolving conflicts in medical

20  testimony, and resolving ambiguities.  <u>Andrews</u>, 53 F.3d at 1039.  A claimant's statements of

21  pain or other symptoms are not conclusive evidence of a physical or mental impairment or

22  disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p, <u>available at</u> 2017 WL 5180304; <u>see also</u> <u>Orn</u>,

23  495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other

24  

25  _____

[7]  Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to

26  preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 26 at 10 n. 2.)

27  [8]  S.S.R. 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination

28  of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Medical evidence is "a relevant factor in determining the severity of a claimant's [symptoms]," but "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the symptoms]."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities,

work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039  (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

2.    Plaintiff's Testimony

As of the March 3, 2020 hearing, Plaintiff was thirty-nine years old with a GED.  (AR 45.) He previously worked for Target for a year and a half in 2005/06, loading and unloading merchandise and retrieving it for customer service representatives.  (Id.)  But Plaintiff testified he "didn't want to work there anymore," due to "some things happening."  (AR 46–47.)  From 2010–2013, Plaintiff worked on an assembly line as a metal fabricator.  (AR 47–48.)  In 2014, Plaintiff completed work through a temp agency.  (AR 48.)  In 2015, Plaintiff worked at Go Express, loading and unloading furniture.  (AR 48–49.)  In 2014 and 2017, Plaintiff worked on an assembly line baking dog treats.  (AR 49–50.)

On a typical day, Plaintiff gets up and takes his medicine, as prescribed.  (AR 50–51.) Plaintiff testified he does not miss doses, and uses an alarm clock to remind himself to take his medications.  (AR 51.)  However, when he first started taking his medications, he used to forget to timely refill the prescription and run out of his medication.  (Id.)

Plaintiff initially attended counseling twice a week, until he got custody of his three-year-old son, and then he began to attend counseling once a week.  (AR 51–52.)  Plaintiff testified he feels like the medication and counseling has helped.  (AR 56.)  Plaintiff also testified that his medications sometimes make him feel too drowsy to get out of bed.  (AR 62.)  And Plaintiff testified that when he reported to his counselor that he was doing well, he "lied" because he thought "[he] was getting in trouble."  (AR 57–58.)  Plaintiff also cancelled a lot of counseling appointments; he testified this was due to not having a stable residence at the time, living with a

girl, and "a mixture of things." (AR 53.) Plaintiff testified that he was taught coping mechanisms to deal with his anger at counseling, but suggested they were not effective because "those ain't real life ... those are just ideas." (AR 61–62.)

Plaintiff uses marijuana three times a week. (AR 56.) Plaintiff testified that he used to use methamphetamines as well, but overdosed twice in 2016 and no longer uses them. (Id.) Plaintiff testified that he drinks socially twice a week; but then stated he only socializes "maybe, once a week," or "three times a month." (AR 55.) On examination by his attorney, Plaintiff later testified that he drinks two beers three times a week. (AR 59.) When he socializes with friends, it is usually in his back yard, watching a football game on tv; or he does this with his stepdad or little brother. (AR 56, 59.) Plaintiff initially testified he lost most of his friends; he later testified he no longer has any friends, "nobody wants to hang out with me, nobody wants to drink with me…." (AR 54, 59.) Plaintiff testified that he recently got a black eye after getting into a confrontation with a friend. (AR 54.)

Plaintiff used to live with his girlfriend and some of her children; however, he is no longer in that relationship. (AR 55.) Plaintiff currently lives with his mom and stepdad. (AR 53.) He does not do any chores. (AR 56.) He "get[s] rides from people" because he no longer has a driver's license. (Id.)

Plaintiff testified he sometimes has good days, and sometimes he has bad days; he estimated that he has approximately four bad days per week. (AR 50.) Plaintiff testified that on a good day, he will change and feed his son; but on a bad day, he will barely change him. (AR 52.) On "bad" days, Plaintiff is depressed and so sad that he doesn't want to do anything. (AR 53.) Plaintiff's mom and stepdad help out with his son on those days. (AR 57.) Plaintiff testified he used to work on cars but doesn't anymore because of his mental state, feeling like he has no energy, and that his mind is always thinking of something else. (AR 54.) Plaintiff testified he cancelled some appointments with his attorneys because he was having a bad day. (AR 60.) Sometimes he watches television. (AR 54–55.) Plaintiff testified he has difficulty concentrating on work and tasks, loses track of time, and usually leaves things unfinished. (AR 58.) Plaintiff testified he had difficultly reading and understanding paperwork. (AR 60.)

Plaintiff also testified that sometimes his anger "goes through the roof."  (Id.)  Plaintiff testified he is unable to work because of the way he thinks people perceive him.  (AR 50.)  He testified he "always ends up in an altercation at the job; any job I have ... I don't know if I take criticism and advice—I take things the wrong way and—but it's [sic] ends up bad for me where I—I'll quit, get fired, or I just won't show up…."  (Id.)  Jokes about Plaintiff's temper were allegedly made at his jobs.  (AR 60.)

### 3.    Plaintiff's Arguments

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting his symptom testimony regarding his purported inability to complete a normal workday/week due to an inability to respond appropriately to criticism in the workplace.  (ECF No. 24 at 15–18.)  More specifically, Plaintiff argues the ALJ merely "summarizes" Plaintiff's testimony but fails "to specify which particular objective evidence of record contradicted specific hearing testimony." (Id. at 15.)  Similarly, Plaintiff argues the ALJ merely summarizes the medical evidence, but again fails to reject specific symptomology testimony at issue in this case, such as his alleged "inability to respond appropriately to criticism." (Id. at 16.)  Further, where the ALJ did present reasons in her decision for discounting Plaintiff's testimony, Plaintiff argues the reasons identified by the ALJ represent a "cherry-picking" mischaracterization of the medical record and therefore do not satisfy the "clear and convincing reasons" standard.  (Id. at 16–17.)

### 4.    Analysis

The Court finds the ALJ provided multiple clear and convincing reasons for discounting Plaintiff's symptom testimony, as discussed herein.

#### a.    Activities of Daily Living

First, the ALJ notes Plaintiff testified to performing daily activities "that are not limited to the extent one would expect, given his complaints of chronic, disabling symptoms."  The Ninth Circuit has held that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  Ghanim, 763 F.3d at 1165. In order to reach such a conclusion, the Ninth Circuit generally requires the ALJ to describe the daily activities, note whether the claimant performs them alone or with assistance, and evaluate

whether the nature of each activity "comprise[s] a 'substantial' portion of [the claimant's] day, or [is] 'transferrable' to a work environment." Id.   However, even where a claimant's activities "suggest some difficulty functioning, they may [still] be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112–13, superseded by regulation on other grounds (citing Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine, 574 F.3d at 693).

In Valentine v. Commissioner of Social Security Administration, for example, the ALJ determined the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities … are inconsistent with the degree of impairment he alleges." Id.   The ALJ further remarked on the claimant's ADLs, but acknowledged these activities did not suggest that the claimant could return to his old job. Id. Instead, the ALJ indicated she thought the ADLs suggested the claimant's later claims about the severity of his limitations were exaggerated. Id. The Ninth Circuit found the ALJ provided clear and convincing reasons to reject the claimant's subjective complaint testimony because she identified evidence that directly contradicted the claimant's contentions about how debilitating his fatigue was. Id.

Similarly, the ALJ identified several ADLs which contradict Plaintiff's claims of totally debilitating symptoms in the instant matter:

> For example, the claimant reported he is capable of performing routine activities of daily living including self-care tasks, some household chores/cleaning, shopping, driving or using public transportation, and managing money (see testimony, Exhibit 4E, Exhibit 3F).   In addition, the claimant has described having a girlfriend since the alleged onset date and more recently being the primary caretaker for his young son, feeding and changing him (see testimony and Exhibits 5F, 8F).   In January 2020, the claimant reported he was doing well and that his son kept him busy (Exhibit 8F, page 3).   There is also an indication in the record that the claimant enjoys working on the property yard and building things for his son (Exhibit 5F, page 8).
>
> …
>
> The undersigned notes that the physical and mental capabilities required in performing many of the activities the claimant described replicate those necessary for obtaining and maintaining employment.   Furthermore, the undersigned notes that the task of

> riding the bus or using public transportation demands that the individual use focus and memory, and indicates adequate cognitive ability as well as significant functional ability of being around others and dealing with stress/anxiety. Thus, it would appear that such activities require significant functional ability and some consistent form of attention and are not consistent with the claimant's allegations of disabling symptoms. These activities are inconsistent with the claimant's alleged severity, but are consistent with the ability to perform at work within the residual functional capacity determined in this decision.

(AR 28.)

As demonstrated *supra*, the ALJ notes Plaintiff's reported ADLs—such as household chores/cleaning, shopping, driving, taking care of his son, working on the property yard, and building things—are inconsistent with Plaintiff's allegations that his depression is so severe that it is "totally debilitating." Molina, 674 F.3d at 1112–13; Valentine, 574 F.3d at 693. With respect to some of Plaintiff's more specific allegations, the ALJ notes Plaintiff's reported ability to use public transportation is inconsistent with his allegations as to the severity of functional deficiency in the areas of focus, memory, concentration, and completing tasks. Similarly, the ALJ notes Plaintiff's reports of having a girlfriend, being the primary caretaker for his young son, and riding the bus or using public transportation are inconsistent with his allegations regarding the severity of functional deficiency in the areas of being around others and dealing with stress/anxiety.

At bottom, not only do the identified ADLs support an adverse credibility determination, Ghanim, 763 F.3d at 1165, the ALJ's demonstrated specificity with respect to identifying the testimony she deemed not credible and each ADL in the evidence which undermines that testimony belies Plaintiff's argument that the ALJ merely summarized the record and nothing more. As such, the inconsistencies between ADLs and testimony identified by the ALJ constitute a clear and convincing reason to discount Plaintiff's symptom testimony. Molina, 674 F.3d at 1112–13; Ghanim, 763 F.3d at 1165; Valentine, 574 F.3d at 693.

### b.     Additional Factors for Determining Credibility

As noted, an ALJ may also consider "ordinary techniques of credibility evaluation" in weighing the symptom testimony, such as assessing the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant

that appears less than candid.  Ghanim, 763 F.3d at 1163; Smolen, 80 F.3d at 1284.  Here, it is

apparent the ALJ also found Plaintiff's testimony "not fully persuasive" based on such

considerations.  For example, the ALJ observed that, "[w]hile the claimant asserted needing

instructions repeated several times, the undersigned notes that he did not require repetition of

questions during the hearing, [and] he was able to answer all questions asked of him in a logical

and comprehensive manner."  (AR 28); see Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir.

1999) (ALJ's personal observations may justify a decision to disbelieve an allegation).  Similarly,

while the ALJ did not point to every internal inconsistency within Plaintiff's testimony, such

inconsistencies are expressly captured in her summary of Plaintiff's testimony (see AR 27–28),

including the notation that, when given the opportunity by his attorney to reconcile his symptom

allegations with the medical evidence reflecting his report to his doctor about feeling better or

doing well with medications and counseling, Plaintiff testified "I lied."  (AR 27 (citing AR 57–

58)); see also, e.g., Morgan, 169 F.3d at 599 (contradiction between claimant's reports to one

doctor versus reports to a different doctor constitutes a clear and convincing reason to reject the

claimant's testimony).  The Court finds these examples of internal contradictions and inconsistent

statements identified by the ALJ in her decision also support her decision to discount Plaintiff's

symptom testimony.  Ghanim, 763 F.3d at 1163; Smolen, 80 F.3d at 1284; see also Robbins, 466

F.3d at 884 (conflicting or inconsistent statements can contribute to an adverse credibility

finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g

(Sept. 17, 1997) (credibility determination can be based on conflicts between the claimant's

testimony and his own conduct, or on internal contradictions in that testimony).

### c. Inconsistencies With the Medical Evidence

Finally, the Court notes the ALJ set forth a summary of Plaintiff's medical records, in

which she highlights a number of treatment records that she deemed to be inconsistent with

Plaintiff's "allegation that he experiences disabling symptoms [so severe] that he is unable to

work on a full-time or regular and consistent basis since the alleged onset date":

> The medical evidence of record does not reveal any significant
> abnormalities that rise to the level of severity as alleged.  The bulk
> of medical evidence shows the claimant's mental conditions are

generally stable and responsive to treatment and medication, when he is compliant.  In July 2019, the claimant's long-standing mental health provider, Marci Bastien, DNP stated the claimant does well when compliant with medication, but that he has a history of non-compliancy that interferes with his progress (Exhibit 5F, page 13). This is consistent with evidence that reveals multiple cancellations of appointments or times when the claimant has no showed or run out of medications (see Exhibits 1F and 7F; Exhibit 4F, pages 5, 9, 10, 16, 19, 25, 27).  There are indications that after being prescribed targeted medication in early 2018, the claimant has reported improved symptoms.  In March 2018, the claimant reported an increased ability to focus (Exhibit 4F, page 26).  The following month, the claimant described a decrease in depression, mood swings, and paranoia and indicated his symptoms were manageable (Exhibit 4F, page 20).  When seen in June 2018, the claimant reported that after restarting medication he could focus on one thing and was able to redirect his obsessions rather than ruminate (Exhibit 4F, page 6).  A similar report was made in April 2019 (Exhibit 5F, page 15).  During a January 2020 visit, the claimant indicated he was "doing well" (Exhibit 8F, page 3).  Certainly, treatment notes reveal some signs of persisting depression and anxiety in spite of medications.  However, mental status examinations typically show the claimant is found to be alert and oriented with good eye contact, cooperative behavior, normal motor activity, regular speech, linear and organized thought process, and intact cognition (Exhibits 4F, 5F, 8F).  A consultative psychologist has opined the claimant has no more than moderate limitations in various areas of mental functioning (Exhibit 3F).  The consultative examiner also indicated that the claimant's mental impairments were very treatable and would show definite improvement with treatment within 12 months.  This is supported by the record as a whole and consistent with the findings made in this decision.

(AR 29.)

Even after setting forth the aforementioned examples, the ALJ further continues to summarize the medical record (AR 30–33) to support her conclusion that while not discounting that Plaintiff has severe impairments and experiences some resulting symptoms, "there is minimal persuasive evidence in the record from treating and examining physicians to indicate these conditions significantly impact [Plaintiff's] ability to perform work-related activities such that he is 'disabled.'" (AR 29.)  In one example, the ALJ notes Plaintiff's June 2018 report to his therapist that his medication adjustment resulted in an ability to sleep well and focus on one thing (citing AR 372–74) was inconsistent with his testimony that he has great difficulty focusing or completing tasks.  (AR 30.)  In another example, the ALJ discusses how Plaintiff was observed to be less depressed, less rigid and with fewer outbursts in April 2019 (citing AR 425–26), and in

July 2019, he denied any worsening symptoms, outbursts or altercations and instead reported that he wanted to get a job and had a goal of employment (citing AR 422–24); and these findings were inconsistent with Plaintiff's allegations of completely debilitating symptoms.  (AR 31.)  Thus, a plain review of the ALJ's decision reveals the ALJ "pointed to specific evidence in the record," Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277, which undermined Plaintiff's claims that his mental impairment symptoms are so severe that he is unable to work on a full-time or regular and consistent basis since the alleged onset date.  See, e.g., Stenberg v. Comm'r Soc. Sec. Admin., 303 Fed. App'x 550, 552 (9th Cir. 2008) (finding noncompliance with recommended treatments, such as attending only half of scheduled therapies and refusing psychological counseling and continued physical therapy, constituted substantial evidence in support of finding the claimant was not entirely credible).

Finally, Plaintiff's allegations of "cherry-picking" and "mischaracterizing the record" are not well-taken.  The Court acknowledges that an ALJ may not consider only evidence that supports a non-disability determination and disregard evidence that supports a finding of disability.  See, e.g., Garrison, 759 F.3d at 1018; Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001).  However, the Ninth Circuit also "do[es] not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."  Lambert, 980 F.3d at 1277; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need not be extensive"); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.' ").

Furthermore, an independent review of the record confirms the ALJ's summary of the evidence reflects an accurate portrayal of the longitudinal medical records.  Here, rather than ignoring them, the ALJ considered the most severe examples of Plaintiff's symptoms (as highlighted in Plaintiff's briefing) in her decision, alongside the treatment notes showing recovery and improvement, and properly reconciled the medical records to reach her ultimate conclusion of nondisability.  For example, the ALJ acknowledges Plaintiff was briefly hospitalized in February

2018 for worsening depression and a reported history of depression, irritability, and anger issues. But the ALJ concluded this incident was associated with "situational stressors" involving child custody.  (AR 29–30 (citing AR 444–50).)  See also Chesler v. Colvin, 649 Fed. App'x 631, 632 (9th Cir. 2016) (ALJ properly considered that mental symptoms were "situational," "and so unlikely to persist once [the claimant's] circumstances improved," and this constitutes a specific, clear, and convincing reason to reject subjective symptom testimony).  The ALJ also noted Plaintiff thereafter responded well to medication and therapy, and upon discharge was found to be calm, cooperative, engaged, and with normal psychomotor activity, spontaneous and fluent speech, stable mood, logical and goal directed thought processes, intact cognition, and fair insight and judgment.  (AR 30.)  The ALJ also noted that soon after this incident, Plaintiff established mental health treatment, and was started on appropriate medication.  (Id. (citing AR 394–97, 402, 406–09).)  Further, progress notes thereafter show that, despite some situational stressors related to finances and custody issues, as well as observations of "cluster B personality traits,"[9] Plaintiff generally reported decreased and manageable symptoms, an improved ability to focus, cessation of night terrors, and a decrease in depression, mood swings, and paranoia.  (AR 30 (citing AR 386–87, 392).)

        In another example, the ALJ addresses a December 2019 episode of hypomania: the ALJ noted that, despite the episode, Plaintiff reported it was not causing distress.  Further, the ALJ noted that on examination, Plaintiff was found to be less anxious and irritable, was calm, euthymic, and smiling, displayed logical and organized thought process, and reported that he no longer used cannabis.  (AR 31 (citing AR 461–64, 469–78).)  Thus, the Court finds the ALJ fairly summarized the longitudinal medical records and represented Plaintiff's history of treatment of impairments accurately.  To the extent Plaintiff has suggested an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

---

[9] Per the Mayo Clinic, cluster B personality disorders are characterized by dramatic, overly emotional or unpredictable thinking or behavior.  They may include antisocial personality disorder, borderline personality disorder, histrionic personality disorder, and/or narcissistic personality disorder.  See https://www.mayoclinic.org/diseases-conditions/personality-disorders/symptoms-causes/syc-20354463 (last visited Aug. 31, 2022).

On this record, substantial evidence supports the ALJ's finding that Plaintiff's allegations of totally disabling symptoms were inconsistent with the objective medical evidence in the record.  Although the ALJ cannot discredit Plaintiff's symptom testimony solely because it is found not to be supported by the objective medical evidence, Rollins, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991), the Court finds the ALJ has provided other reasons to reject Plaintiff's testimony, as discussed herein.  Therefore, the ALJ could properly consider that Plaintiff's complaints were inconsistent with clinical evaluations, thus satisfying the requirement of stating a clear and convincing reason for discrediting Plaintiff's testimony.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).

Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

**B.     Whether the ALJ's Mental RFC Is Supported By Substantial Evidence**

1.     Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, available at 1996 WL 374184, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195.

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).

2.     Analysis

**a.     The RFC Is Supported By Substantial Evidence**

As detailed *supra* and herein, the ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920 and considered the totality of the medical evidence, medical opinions, Plaintiff's testimony, and non-medical evidence in the record to reach an RFC determination.

i.     Paragraph B Criteria

At step three of the disability analysis, the ALJ applied the special technique for evaluating the severity of mental impairments by rating Plaintiff's level of impairment in the four functional areas under paragraph B (the "paragraph B criteria"),[10] and found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.08 (personality and impulse-control disorders) because his mental impairments did not result in at least one extreme or two marked limitations out of the four broad areas of functioning.  (AR 23–25); see 20 C.F.R. Pt. 404, Subpt. P, App. 1.

More specifically, the ALJ determined Plaintiff has a "mild" limitation in "understanding, remembering, or applying information" because the record supports a conclusion that Plaintiff is able to adequately attend to his personal needs without difficulty, do some light household chores,

---

[10] The "paragraph B criteria" evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  To satisfy the paragraph B criteria, a claimant's mental impairments must be deemed to result in an "extreme" limitation as to at least one of the four categories, or a "marked" limitation in at least two of the four categories.

drive or use public transportation, shop, and manage money/pay bills.  (AR 25 (citing AR 367–410).)  The ALJ also noted Plaintiff has become the primary caretaker for his toddler son, and is able to get outside and work on his property.  (Id. (citing AR 418–21, 461–64).)  Further, consultative psychologist Dr. Livesay opined Plaintiff's ability to perform simple and repetitive tasks, as well as detailed and complex tasks, is unimpaired.  (Id. (citing AR 360–66).)  And treatment notes from Plaintiff's mental health provider reveal no significant abnormalities in this area.  Thus, the ALJ concluded Plaintiff can understand and learn terms, instructions, and procedures; follow one- or two-step instructions to carry out a task; and identify and solve problems.  (Id.)

In finding Plaintiff has a "moderate" limitation in "interacting with others," the ALJ acknowledged that other medical evidence of record reveals a history of domestic violence, anger, and incarceration, and that Plaintiff may experience some depressive/anxiety-related symptoms at times, and reports some agitation or anger issues to situational stressors.  The ALJ also noted that Plaintiff's issues getting along with his boss at work occurred around the alleged onset date.  (Id. (citing AR 435–43).)  However, the ALJ also found the evidence as a whole indicates Plaintiff maintains relationships; he is able to initiate and sustain conversations; he can attend doctor/therapy appointments without conflict; and he can advocate for himself.  (Id.)  Additionally, the ALJ noted there is no evidence of significant communicative deficits in the record, or substantial evidence of difficulty interacting with others.  Further, the ALJ noted Dr. Livesay opined that Plaintiff's ability to accept instructions from supervisors is moderately impaired; and his ability to interact with coworkers and the public is only mildly impaired.  (Id. (citing AR 360–66).)  Thus, the ALJ concluded Plaintiff is moderately limited in his ability to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  (Id.)

In finding Plaintiff has a "moderate" limitation with regard to "concentrating, persisting or maintaining pace," the ALJ concluded Plaintiff "may have some problems in this area because of mental symptoms."  During his consultative evaluation with Dr. Livesay, for example, it was noted Plaintiff's concentration was moderately disrupted by mood-swinging and some emotional

lability.  However, for the most part, Plaintiff sustained his concentration and was able to follow a simple three-step command.  (AR 25–26 (citing AR 360–66).)  The ALJ noted the evidence reflects Plaintiff's cognitive skills appear adequate.  In addition, the ALJ noted treatment notes from Plaintiff's mental health provider also show Plaintiff's cognition, attention, and concentration are generally intact.  Furthermore, the ALJ acknowledged that Plaintiff may sometimes experience increased mental symptoms, but concluded the medical evidence as a whole supports a conclusion that Plaintiff can complete tasks in a timely manner, can initiate and perform a task he understands and knows how to do, and can work at an appropriate and consistent pace.  Therefore, the ALJ concluded Plaintiff has a moderate limitation in the ability to focus attention and stay on task for a sustained basis.  (Id.)

Finally, the ALJ found Plaintiff has a "moderate" limitation in "adapting or managing oneself" because the overall record shows Plaintiff can generally manage his psychologically-based symptoms, make plans for himself, and can be aware of normal hazards and take appropriate precautions.  She thus concluded Plaintiff has a moderate limitation in the ability to regulate his emotions, control his behavior, and maintain well-being in a work setting.  (AR 26.)

ii.     Medical Opinions

The ALJ also considered at length the medical opinions of consultative psychologist Dr. Jerry Livesay (AR 31–33 (citing AR 360–66)) and the state agency psychological experts, E. Aquino-Caro, M.D. and J. Collado, M.D. (AR 33 (citing AR 70–95, 98–123)).

(a)     **Consulting Physician Dr. Jerry Livesay**

Dr. Livesay examined Plaintiff on June 24, 2018.  (AR 360–66.)  He diagnosed Plaintiff with bipolar I disorder, obsessive compulsive disorder, and anti-social personality disorder.  In his functional assessment/medical source statement, Dr. Livesay opined Plaintiff's ability to perform simple and repetitive tasks is unimpaired; his ability to perform detailed and complex tasks is unimpaired; his ability to accept instructions from supervisors is moderately impaired; his ability to interact with coworkers and the public is mildly impaired; his ability to perform work activities on a consistent basis, without special or additional instruction, is mildly impaired; his ability to maintain regular attendance and complete a normal workday/workweek without interruptions

from a psychiatric condition is moderately impaired; and his ability to deal with the usual stress in the workplace is mildly impaired.  (AR 366.)  Dr. Livesay further opined Plaintiff's "problems are treatable and he is likely to show measurable improvement over the course of the next 12 months if he remains involved in an evidence-based treatment program."  (AR 365.)

The ALJ found Dr. Livesay's opinion largely "persuasive."  The ALJ determined Dr. Livesay's functional assessment was consistent with the medical evidence as a whole showing relatively benign findings on examinations, which lack significant abnormalities and indicate Plaintiff typically presents with a normal mood and affect and intact communications skills.  The ALJ determined the opinion therefore supported a conclusion that Plaintiff is capable of a range of basic mental work-related activities, and described limitations that almost completely mirror those in the RFC.  While finding Dr. Livesay's opinion supported the conclusion that Plaintiff "can tolerate some degree of interaction with others," the ALJ determined greater limitations were warranted because she had assessed Plaintiff to have a "moderate" B criteria limitation in the area of social functioning based on all of the medical and non-medical evidence, including Plaintiff's reported history of domestic violence, difficulty getting along with coworkers, and being segregated for fighting in jail.  The ALJ found Dr. Livesay's opinion did not provide adequate explanation on why Plaintiff was deemed to have only a "mild" limitation in the ability to interact with coworkers and the public; therefore, the ALJ suggested this portion of Dr. Livesay's opinion was less persuasive, and she accorded the greater mental functioning limitations in the RFC of "occasional supervision, occasional interaction with coworkers and usual work situations," working "in proximity to others but [not performing] job tasks that require cooperation with others or tandem job tasks," and "brief, superficial interaction with the general public on a less than occasional basis."

**(b)    State Agency Psychiatrist E. Aquino-Caro, M.D.**

Dr. Aquino-Caro reviewed the record as of July 26, 2018.  (AR 74–80, 82, 89–93, 95)  He determined Plaintiff has severe impairments of depressive, bipolar and related disorders, secondary to anxiety and obsessive-compulsive disorders.  As to the paragraph B criteria, Dr. Aquino-Caro opined Plaintiff has a mild limitation regarding the ability to understand, remember,

or apply information, and moderate limitations with respect to the ability to interact with others, concentrate, persist, or maintain pace, and adapt of manage oneself.

In considering the mental RFC, Dr. Aquino-Caro opined Plaintiff is moderately limited in his ability to understand and remember detailed instructions, but is not significantly limited in any of the other impairments falling under the understanding and memory limitations category.

Of the sustained concentration and persistence limitations category, Dr. Aquino-Caro found Plaintiff is moderately limited in his ability to carry out detailed instructions, sustain an ordinary routine without special supervision, and work in coordination with or in proximity to others without being distracted by them; but is not significantly limited in any other area within this category, including the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." As to this overall category, Dr. Aquino-Caro opined Plaintiff has the ability to attend and concentrate for periods of two hours, as is required in the workplace.

As to the area of social interaction limitations, Dr. Aquino-Caro found Plaintiff is moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; but he is not significantly limited in any other way. As to this overall category, Dr. Aquino-Caro opined Plaintiff has the ability to interact appropriately with peers and supervisors.

Finally, as to the category of adaptation limitations, Dr. Aquino-Caro found Plaintiff is not significantly limited in any way.

Based on these findings, Dr. Aquino-Caro opined Plaintiff is capable of simple and repetitive tasks.

**(c)      State Agency Psychiatrist J. Collado, M.D.**

On reconsideration, Dr. Collado reviewed Plaintiff's records as of September 11, 2018. (AR 103–08, 115–21.) As to understanding and memory limitations, Dr. Collado opined Plaintiff is not significantly limited in the ability to remember locations and work-like procedures, and to

understand and remember very short and simple instructions; and is moderately limited in the ability to understand and remember detailed instructions. As such, Dr. Collado opined Plaintiff has the ability to understand and remember simple instructions.

As to sustained concentration and persistence limitations, Dr. Collado opined Plaintiff is not significantly limited in the ability to carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to make simple work-related decisions; or to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Collado opined Plaintiff is moderately limited in the ability to sustain an ordinary routine without special supervision; and to work in coordination with or in proximity to others without being distracted by them. As such, Dr. Collado opined Plaintiff has the ability to attend and concentrate for periods of two hours, as is required in the workplace.

As to social interaction limitations, Dr. Collado opined Plaintiff is not significantly limited in the ability to interact appropriately with the general public; to ask simple questions or request assistance; or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Dr. Collado opined Plaintiff is moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. As such, Dr. Collado opined Plaintiff has the ability to interact appropriately with peers and supervisors.

As for adaptation limitations, Dr. Collado opined Plaintiff is not significantly limited in the ability to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; or to set realistic goals or make plans independently of others. As such, Dr. Collado opined Plaintiff has the ability to adapt to normal workplace changes.

Accordingly, Dr. Collado opined Plaintiff is capable of simple and repetitive tasks, and the finding of nondisability was warranted.

The ALJ found Drs. Aquino-Caro and J. Collado's opinions to be generally consistent with the medical evidence of record, and deserving of "substantial attention" to the extent that they are consistent with medical notes reflecting Plaintiff's normal and near-normal examination findings, indications of improvement with medications and therapy, and Plaintiff's ability to perform some ADLs and act as primary caretaker to his young son.  (AR 33.)  However, the ALJ found Drs. Aquino-Caro and J. Collado's opinions only "partially persuasive" to the extent that they did not provide Plaintiff adaptive or social limits, despite indicating moderate limitations in these domains.  Accordingly, the ALJ formulated an RFC determination which incorporated greater limitations than those suggested by Drs. Aquino-Caro and J. Collado.

iii.    RFC Determination

Thus, based on Plaintiff's impairments and limitations, and her review of the medical and non-medical evidence, the ALJ determined Plaintiff can "perform a full range of work at all exertional levels," but has a mental RFC requiring the following, multiple nonexertional limitations:

> **[Plaintiff] can perform work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time of up to 30 days and has a reasoning level of no higher than 2.  The claimant can sustain ordinary routines, understand, carry out and remember simple instructions and use judgment in making simple work related decisions.  He can attend and concentrate for two-hour periods totaling a normal eight hour workday with usual work breaks.  The claimant can respond appropriately to occasional supervision, occasional interaction with coworkers and usual work situations.  He can work in proximity to others but cannot perform job tasks that require cooperation with others or tandem job tasks.  He can tolerate brief, superficial interaction with the general public on a less than occasional basis.  The claimant can deal with changes in a routine work setting.**

(AR 26 (emphasis in original).) On this record, the Court concludes the ALJ made specific citations to the administrative record that constitute substantial evidence in support of the RFC determination.

**b.    Plaintiff's Arguments Are Unavailing**

In evaluating Plaintiff's challenge to the ALJ's mental RFC determination, it is important to note that Plaintiff does not challenge the ALJ's decision with respect to the weight the ALJ

accorded the medical opinions; he does not challenge the ALJ's characterization at step three of the paragraph B criteria limitations as mild or moderate based on her review of the medical opinions and record, or the ultimate determination that Plaintiff does not satisfy the paragraph B criteria (or paragraph C criteria); it is undisputed that the ALJ expressly provided the same terms of her RFC determination to the VE during the disability hearing; and Plaintiff does not challenge the VE's determination of available jobs based on the ALJ's RFC determination.  As such, these arguments are deemed waived.  See Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review ... issues which are argued specifically and distinctly in a party's opening brief.").

Instead, Plaintiff argues the mental RFC is not supported by substantial evidence because (1) the ALJ did not properly account for Dr. Livesay's "moderate" impairment in the "ability to maintain regular attendance and complete a  normal workday/workweek without interruptions from a psychiatric condition," (also referred to herein as the "normal workday" impairment) (2) the ALJ improperly interpreted medical evidence to formulate her own MRFC function-by-function assessment, and (3) the ALJ failed to account for specific evidence in the record—including Plaintiff's symptom testimony—that supports Plaintiff's limitations in "responding appropriately to criticism" and the ability to "maintain a normal workday and sustain attendance at a workplace without interruptions from psychologically based symptoms," and to incorporate those limitations into her RFC determination.  (ECF No. 24 at 8–15.)  The Court addresses each argument in turn.

i.      Dr. Livesay's opinion

With respect to Dr. Livesay's opinion, Plaintiff's argument that the ALJ failed to incorporate the specific "moderate" normal workday impairment identified by Dr. Livesay into the RFC is unavailing.

An impairment in ability to "maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition," like the broader functional areas identified in the paragraph B criteria, requires a more detailed assessment by

itemizing various functions contained in the identified area.  See Carver v. Colvin, 600 Fed. App'x 616, 620 (10th Cir. 2015) (quoting SSR 96-8p, at *4); see also SSR 96-8p, at *6; 20 C.F.R. §§ 416.920(a)(4)(ii)–(iii), 416.920a(d)(1).  For that reason, a direct translation of this finding into the concrete, functional limitations that must be identified in the RFC is untenable.[11]  Thus, the Ninth Circuit has emphasized the relevant inquiry into the propriety of the translation of a "moderate" functional area (as in the paragraph B criteria) to a concrete RFC functional limitation is whether the RFC limitations are supported by the properly-weighted medical evidence.  See Stubbs-Danielson, 539 F.3d at 1173–74.   Thus, to evaluate whether the ALJ properly encompassed certain functional area limitations into the RFC determination, the challenged limitations must be evaluated within the context of the *entire* RFC determination and the ALJ's evaluation of the medical and non-medical evidence in each case.  Here, however, Plaintiff does not examine the "normal workday" impairment within the context of the entire RFC determination, even though the limitations set forth in the RFC are generally interrelated.  Indeed, Plaintiff fails to address the fact that the RFC also limits Plaintiff to "simple duties," a limitation which the Ninth Circuit has determined sufficiently addresses "moderate" mental limitations.[12]  See Stubbs-Danielson, 539 F.3d at 1174; Rogers v. Comm'r Soc. Sec. Admin., 490 Fed. App'x.

---

[11] See Langford v. Astrue, No. CIV S–07–0366 EFB, 2008 WL 2073951, at *3 (E.D. Cal. May 14, 2008) (finding limitations under the B and C criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation; they are not an RFC assessment and an ALJ need not include them, verbatim, in his ultimate assessment of a claimant's RFC); see also Chavez v. Colvin, 654 Fed. App'x. 374, 375 (10th Cir. 2016) (ALJ need not "parrot ... exact descriptions of ... limitations" to reach an RFC determination consistent with the medical record and claimant's limitations); Carver, 600 Fed. App'x at 620 (finding ALJ "sufficiently captured the essence of the Section III functional limitations," despite not repeating limitations as stated in the medical opinions "verbatim," and commenting, "To conclude otherwise would parse the ALJ's language too finely."); Schneider, 433 Fed. App'x. at 509–10 (ALJ reasonably translated diagnosis that claimant "was expected to have significant difficulties in maintaining normal social interactions" due to "stress and anxiety" and adequately addressed all limitations by issuing RFC which limited claimant to "unskilled work with no public contact and minimal social interactions with co-workers," even though it did not expressly include inability to interact with "supervisors").

[12] It is perhaps also worth noting that the regulations define a "moderate degree of mental limitation" to mean that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"; whereas, a "marked" impairment means "functioning in this area … is seriously limited"; and an "extreme" impairment means the claimant is "[u]nable to function in this area independently."  20 C.F.R. §§ 404, Subpt. P, Appx. 1, 12.00.F.2.c, 12.00F.2.d (emphasis added); see also, e.g., Sandoval v. Berryhill, CIV 17-0641 JHR, 2018 WL 3429920 (D.N.M. Jul. 16, 2018), at *7 (noting only "marked" impairment prevents any interaction; whereas limitation of "moderate to marked" denotes "abilities in these areas are limited, [but] they are not completely absent.").  Thus, to the extent Plaintiff suggests any accounting for his moderately limiting "normal workday" impairment in the RFC would necessarily result in an ultimate finding of disability, such contention is unsupported in law.

15 (9th Cir. 2012).  Nor does Plaintiff acknowledge the multiple additional limitations the ALJ provided in the RFC (which Defendant aptly describes as "generous"), including "occasional supervision," "occasional interaction with coworkers and usual work situations," working "in proximity to others but [not performing] job tasks that require cooperation with others or tandem job tasks," and "brief, superficial interaction with the general public on a less than occasional basis."  In ignoring these other limitations in the RFC, which may holistically address his multiple impairments, Plaintiff's argument takes the "normal workday" limitation out of context and seeks to "parse the ALJ's language too finely." Carver, 600 Fed. App'x at 620.  As such, his argument fails.

The Court also takes issue with the underlying premise of Plaintiff's argument.  Plaintiff argues the ALJ found Dr. Livesay's " 'moderate' impairment in an ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition 'persuasive' and 'consistent' with the 'medical evidence as a whole.' "  (ECF No. 24 at 8.)  But this representation of the ALJ's finding constitutes a mischaracterization of the record and is not well-taken.  On the face of her decision, the ALJ does not address, let alone emphasize, Plaintiff's ability to "maintain regular attendance…"; rather, the ALJ deemed Dr. Livesay's opinion "persuasive" to the extent that it is consistent with the longitudinal medical evidence showing relatively benign findings on examinations, a lack of significant abnormalities, a typically normal mood and affect and intact communications skills, and because it supports a finding that Plaintiff is "capable of a range of basic mental work-related activities."

A review of the comprehensive record also belies Plaintiff's overemphasis on the "normal workday" impairment and his argument that it was not considered by the ALJ in her formulation of the RFC.  For example, both Drs. Aquino-Caro and J. Collado—whose opinions the ALJ also found "persuasive" to the extent that they were consistent with medical notes reflecting Plaintiff's normal/near-normal examination findings, indications of improvement with medications and therapy, and ability to perform some ADLs—found Plaintiff's ability to "complete a normal workday/workweek without interruptions from a psychiatric condition" is "not significantly limited"; this conflicts with Dr. Livesay's opinion that Plaintiff's ability to "maintain regular

attendance and complete a normal workday/workweek without interruptions from a psychiatric condition" was "moderately" limited.  In light of these conflicting medical opinions, the ALJ resolved the conflict and synthesized the medical evidence, as required by the Regulations, Morgan, 169 F.3d at 603; Lingenfelter, 504 F.3d at 1042, and this is properly reflected in the RFC determination.  Again, it is noteworthy with respect to the instant argument that Plaintiff has not challenged the weight the ALJ accorded to the medical opinions.

In any event, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner, 613 F.3d at 1222–23); see also Chavez, 654 Fed. App'x. at 375.  Again, this is because it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter, 504 F.3d at 1042.

In sum, the Court finds the ALJ properly synthesized the conflicting medical opinions concerning Plaintiff's functional limitations into the RFC determination, based on the entire medical and non-medical record, inclusive of Dr. Livesay's opinion.

ii.     The ALJ's Interpretation of the Medical Evidence

Relatedly, Plaintiff's argument that the ALJ impermissibly crafted the RFC from her own lay interpretation of the "raw" medical evidence of record (ECF No. 24 at 13–15) is also unavailing.

As previously discussed, the ALJ properly synthesized the medical and other evidence to reach the mental RFC determination, which the Court has determined is supported by substantial evidence in the record.  Biestek, 139 S. Ct. at 1153; Stubbs-Danielson, 539 F.3d at 1173–74. Furthermore, as the Court has also noted, it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan, 169 F.3d at 603 (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); see also

1   <u>Chavez</u>, 654 Fed. App'x. at 375.  To the extent Plaintiff suggests otherwise, his argument is

2   unavailing.

3           iii.     <u>Accounting for Plaintiff's Limitations in the RFC Determination</u>

4          Finally, Plaintiff argues the ALJ failed to account for specific evidence in the record—

5   including his subjective testimonial evidence—that supports Plaintiff's limitations in "responding

6   appropriately to criticism" and the ability to "maintain a normal workday and sustain attendance

7   at a workplace without interruptions from psychologically based symptoms."  (ECF No. 24 at 9–

8   10.)  In sum, Plaintiff argues the ALJ did not take the record into account and the RFC does not

9   account for his limitations in responding appropriately to criticism.  (<u>Id.</u> at 11.)

10          As to this argument, the Court finds Plaintiff is merely rehashing his prior arguments that

11   the ALJ improperly discounted his testimony and failed to account for the limitations discussed in

12   Dr. Livesay's opinion.  Thus, Plaintiff's argument on this basis fails.  <u>See</u> <u>Stubbs-Danielson</u>, 539

13   F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical

14   evidence and testimony); <u>see also</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 423 (9th Cir. 1988)

15   (acknowledging there is no requirement that testimony for which the ALJ has provided specific

16   and legitimate reasons to discount be included in the hypothetical given the VE).

17          In sum, the Court concludes the ALJ properly synthesized the medical and other evidence

18   to reach the RFC determination, <u>Biestek</u>, 139 S. Ct. at 1153, and the RFC determination is

19   supported by substantial evidence in the record, <u>Stubbs-Danielson</u>, 539 F.3d at 1173–74.  Further,

20   this Court must defer to the decision of the ALJ where evidence exists to support more than one

21   rational interpretation.  <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1258 (9th Cir. 1992); <u>Burch</u>, 400 F.3d

22   at 679.  "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not

23   rational, the ALJ's conclusions were supported by substantial evidence."  <u>Shaibi v. Berryhill</u>, 883

24   F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court will not disturb the ALJ's decision with

25   respect to her evaluation of the medical and non-medical record and RFC determination.

26   ///

27   ///

28   ///

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 24) is DENIED; and

2.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Manuel Cruz Aragon and close this case.

IT IS SO ORDERED.

Dated:   __September 14, 2022__                     _____

                                                                          UNITED STATES MAGISTRATE JUDGE